IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

**PHYLLIS ANDREWS, et al.,**       }
                                   }
    **Plaintiffs,**           }
                                   }
**v.**                             }   **Case No.: 2:06-cv-1645-RDP**
                                   }
**UNITED STATES PIPE AND**         }
**FOUNDRY COMPANY, INC., et al.**  }
                                   }
    **Defendants.**           }

## MEMORANDUM OPINION

The court has before it the June 15, 2009 motion (Doc. #80) of Defendant United States Pipe and Foundry Company, LLC f/k/a United States Pipe and Foundry Company, Inc. ("U.S. Pipe") to strike in part the findings of Special Master Lyndel Erwin. Pursuant to the court's order of June 19, 2009, the motion (Doc. #80) to strike is now under submission and is considered herein without oral argument.

Having considered the briefs and evidentiary submissions, the court finds that U.S. Pipe's motion to strike is due to be granted in part and denied in part for the reasons outlined below.

**I.**    **Relevant Procedural History and Facts**

Plaintiff Phyllis Andrews and 46 others commenced this action on August 18, 2006 by filing a collective action complaint (Doc. #1) in this court for violations of the Federal Wage and Hour Law, 29 U.S.C. §§ 201, *et seq.*, specifically asserting that they were improperly denied compensation for time spent donning and doffing certain personal protective equipment ("PPE"), including boots, hard hats, safety glasses, ear plugs, spats, and fire-retardant uniforms also known as "greens." (*See*

Doc. #1 at 7-9, ¶¶ 14, 18, 19).  On August 25, 2006, Plaintiffs filed an amended complaint (Doc. #7) adding numerous opt-in plaintiffs to the lawsuit, and asserting that Plaintiffs are similarly situated because they all "are or have been employed" by U.S. Pipe and are or have been "required to wear personal protective equipment that includes a specialized and unique fire-suit."  (Doc. #7 at 5-6, ¶ 6).

After thoroughly reviewing the initial and amended complaints and meeting with the parties in a scheduling conference, the court entered an order directing the parties to cooperate and confer with each other in order to provide the court with, as relevant here, an estimate of the average time a U.S. Pipe employee must spend "donning and doffing the fire-suit that must be worn while performing work, as well as any travel time such employee will incur (a) after donning the fire-suit and before arriving at his assigned work location so that he may clock in for work, or (b) before doffing the fire suit . . ."  (Doc. #15 at 1).  Because the parties could not independently come to an agreement on that point, they sought to rely on a study performed by an independent expert.  (*See* Doc. #16 at 1, ¶ 1).  Thus, in April 2007, the court appointed Special Master Lyndel Erwin to:

> develop an estimate of the average time that one of Defendants' employees must spend donning and doffing the fire-suit that must be worn while performing work, as well as any travel time such employee will incur (a) after donning the fire-suit and before arriving at his assigned work location so that he may clock in for work, or (b) before doffing the fire-suit.

(Doc. #19 at 1, ¶ 1).

On June 6, 2007, Erwin completed his report and provided it to the court and counsel.  (*See* Doc. #80, Exh. A).  As to the time required to don and doff personal protective gear, Erwin's report states:

> 1. Donning of the personal protective gear (greens & safety shoes/boots) varied from a low of five (5) minutes to a high of twenty (20) minutes for the 21 people that I observed at the North Birmingham, Bessemer, and Burlington plants. There were only two employees on the low side and one on the high end with an overall average of 11 minutes. The other required PPG can be donned in a very short time and would normally be put on after the employee has donned the greens and the safety boots.
>
> 2. Doffing of the personal protective gear varied from a low of seven (7) minutes to a high of thirty (30) minutes for the 25 people that I observed in the three plants. There were two employees at the seven minute level and only one at the 30 minute level. The average for the 25 employees was 15 minutes. The remaining required items can be removed very quickly or were normally removed while the employee was walking from their work area to the change house.

(Doc. #80, Exh. A at 3-4).[1]  As to the time required by individual employees to walk from the changing facility to the work area, Erwin noted that the time varied from plant to plant and from department to department, with the averages being as follows:

| Plant | Melting Department | Casting Department |
|---|---|---|
| Chattanooga | 6 minutes each way | 3 ½ minutes each way |
| North Birmingham | 2 ½ minutes each way | 3 ½ minutes each way |
| Bessemer | 8 minutes each way | 8 minutes each way |
| Burlington | 4 minutes each way | 4 minutes each way |

(Doc. #80, Exh. A at 6). Erwin also included in his findings a section on "compensability issues," making several comments therein which are the subject of this motion:

> U.S. Pipe does not require that the employee don and doff the personal protective gear at the plant. I observed numerous employees both arriving and leaving the plant wearing the greens. The employees proceeded directly from their vehicles into the plant or directly from the plant to their vehicles without entering the change house.
>
> . . .

---

[1] Mr. Erwin used the acronym "PPG" to refer to personal protective gear. As noted above, the court has employed the similar term personal protective equipment ("PPE") in this opinion.

> Even though an employee chooses to change into and/or out of the PPG at home, I believe that they are entitled to [the] same amount of compensation as those employees who don and doff PPG at home.

(*See* Doc. #80, Exh. A at 5). Finally, Erwin concluded that "employees in the melting and casting departments who are required to wear the greens should be compensated for 10 minutes each shift for donning their PPG and additional 10 minutes for doffing their PPG." (Doc. #80, Exh. A at 6).

## II.   Standard of Review

U.S. Pipe alleges that the findings of the Special Master should be stricken: (1) on the average amount of time employees must spend donning and doffing PPE because it was based on flawed methodology and speculation; and (2) where the Special Master offered opinions regarding compensability. (*See* Doc. #80 at 6-15). Although the company argued in its original motion that *de novo* was the proper standard for this court to review the report, it now seems to take a step back and contend that the clear error standard applies. (*Compare* Doc. #80 at 6 ["Here, the Court must review *de novo* the Special Master's findings on donning and doffing times . . ."] and Doc. #91 at 4 ["Accordingly, this Court has a duty to review Mr. Erwin's factual findings for clear error."]).

Federal Rule of Civil Procedure 53(f)(3) provides:

> The court must decide de novo all objections to findings of fact made or recommended by a master, unless the parties, with the court's approval, stipulate that: (A) the finding will be reviewed for clear error, or (B) the findings of a master appointed under Rule 53(a)(1)(A), or (C) will be final.

While no stipulation was made by the parties for the application of the alternatives of the rule, Plaintiffs argue that U.S. Pipe failed to timely object to the factual findings of the Special Master under Rule 53(f)(2).[2] (*See* Doc. #87 at 1-6; *see also* Doc. #91 at 3-7). Thus, Rule 53(f)(3) is

---

[2] "A party may file objections to – or a motion to adopt or modify – the master's order, report, or recommendations no later than 20 days after a copy is served, unless the court sets a different

inapplicable. However, this court is still obligated to ensure that no portion of the Special Master's report is clearly erroneous. *See Livas v. Teledyne Movible Offshore, Inc.*, 607 F.2d 118 (5th Cir. 1979) (Plaintiff "did not object to the findings of the [Special Master] . . . This does not, however, bar him from raising the independent obligation of the court to determine that the Master's findings are not clearly erroneous.")[3] and *Henry Hanger & Display Fixture Corp. of Am. v. Sel-O-Rak*, 270 F.2d 635, 642 (5th Cir. 1959) ("It is not necessary to make objections to the Master's findings . . . the findings, on this question, of the Master . . . are not clearly erroneous);[4] *see also Wright & Miller, Federal Practice & Procedure* § 2612 at 627-29 (noting that the court is permitted to adopt or affirm, wholly or partly reject or reverse, or resubmit the Master's report with instructions); *Seiko Epson Corp. v. Nu-Kote Intern., Inc.*, 190 F.3d 1360, 1367 (C.A. Fed. 1999) (despite lack of written objections, appellate court considered and rejected defendant's contention that Master's report was not relevant); *Mitchell v. All-States Bus. Prods. Corp.*, 250 F. Supp. 403, 409 (D.C. N.Y. 1965) ("[I]t is not necessary to make objections to the Master's findings . . . The Rule clearly gives the court the power to modify the Master's report upon a motion for action upon the report . . ."). Accordingly, despite Plaintiffs' contention that U.S. Pipe's objections to the report are "late" and should not be considered, this court has a responsibility to review the Special Master's methods for estimating donning and doffing time for clear error, and it is appropriate for it to consider Defendant's assertions as part of that process.

---

time." FED. R. CIV. P 53(f)(2).

[3] The Eleventh Circuit, sitting *en banc* in *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

[4] *See* footnote 3, *supra*.

**III.     Analysis**

The court must address whether (1) the Special Master's report is clearly erroneous regarding the average time employees must spend donning and doffing PPE and (2) the Special Master's opinions on compensability should be disregarded as beyond the scope of his appointment. Each of these issues will be addressed in turn.

      **A.     The Special Master's Report Is Not Clearly Erroneous on the Average Time Employees Must Spend Donning and Doffing PPE.**

It bears repeating here that the Special Master was charged by the court to:

> visit Defendants' plants and perform any analysis he deems necessary to develop an estimate of the average time that one of Defendants' employees must spend donning and doffing the fire-suit that must be worn while performing work, as well as any travel time such employee will incur (a) after donning the fire-suit and before arriving at his assigned work location so that he may clock in for work, or (b) before doffing the fire-suit.

(Doc. #19, ¶ 1). U.S. Pipe contends that the Master used flawed methodology and speculation to discharge that duty, by failing to personally observe and time any employee actually donning and doffing PPE. (*See* Doc. #80 at 6-9).

Under clear error review, the Special Master's estimates of donning and doffing time were not flawed or speculative. Mr. Erwin performed the analysis he deemed necessary, as was his charge, to develop the "most accurate calculation of the amount of time required for an employee to don and doff their Personal Protective Gear (PPG)."[5] (Doc. #80, Exh. A at 1). That analysis consisted of a visual inspection of each changing facility and observation of employees entering and leaving the facility where they donned and doffed PPE. (*See* Doc. #80, Exh. A at 1). Although the

---

[5] Despite U.S. Pipe's contention to the contrary, it was not the Special Master's charge to "say for sure how long it took an average employee to don and doff various pieces of PPE." (Doc. #80 at 7).

6

Special Master did offer some of his views as to why some employees took a longer amount of time to don and doff than others,[6] few employees were observed to be on the high end of the spectrum. (*See* Doc. #80, Exh. A at 3). In fact, more employees were observed at the low end of the spectrum than at the high end of the spectrum. (*See* Doc. #80, Exh. A at 3-4). After recording the various times of all such employees, the Special Master then averaged the times together to take account of any disparities. (*See* Doc. #80, Exh. A at 3-4). He also corrected for the increased amount of time he observed that employees required for doffing the gear, which he attributed to non-compensable showering, and recommended that "the amount of compensable time allowed should be the same for both donning and doffing." (Doc. #80, Exh. A at 5).

The findings of the Special Master reached based on these methods are not clearly erroneous.[7] *See Herrmann v. GutterGuard, Inc.*, 199 Fed. Appx. 745, 751-52 (11th Cir. 2006) ("A finding of fact is clearly erroneous when the entirety of the evidence leads the reviewing court to a definite and firm conviction that a mistake has been committed.") (quoting *Dresdner Bank v. M/V Olympia Voyager*, 446 F.3d 1377, 1380 (11th Cir. 2006)); *see also Ballard v. C.I.R.*, 522 F.3d 1229, 1234 (11th Cir. 2008) (on clear error review, findings of fact are disturbed only if "manifestly unreasonable") (*quoting Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573-74 (1985)). To the contrary, the Special Master discharged his duty as dictated by the court. Therefore, on this issue Defendant's motion to strike is due to be denied.

---

[6] "[W]hen multiple employees entered the changing house at the same time they seemed to take longer than when an individual employee entered the facility alone." (Doc. #80, Exh. A at 6).

[7] Even had this court been proceeding under *de novo* review, this conclusion would likely be the same. The Special Master's charge was to "perform any analysis he deems necessary to develop an estimate . . ." (Doc. #19, ¶ 1). This he has accomplished.

**B.     The Special Master Was Not Appointed to Offer Opinions on Compensability.**

Although Plaintiffs maintain that the Special Master's opinions regarding compensability are not erroneous and are well-supported, they nevertheless agree that the opinions should be stricken[8] because they fall outside the scope of this court's charge to the Special Master. (*See* Doc. #87 at 10-15). The court expresses no opinion on whether U.S. Pipe has "misconstrued" Mr. Erwin's opinion, and relies solely on the agreement of the parties in stating that as to his opinions on compensability, the report of the Special Master is due to be stricken. On that issue, the motion to strike is due to be granted.

**IV.    Conclusion**

For the foregoing reasons, the court finds the motion to strike (Doc. #80) is due to be granted in part and denied in part. The court finds the Special Master's finding on the average time employees must spend donning and doffing personal protective equipment will not be stricken, but the Special Master's opinions regarding compensability are due to be stricken. A separate order in accordance with this memorandum opinion will be entered.

**DONE** and **ORDERED** this   4th   day of August, 2009.

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　
　　　　　　　　　　　　　　　　**R. DAVID PROCTOR**
　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

---

[8] The court appreciates that the parties complied with that section of its June 19, 2009 order which directed the parties to "meet and confer in good faith to attempt to resolve any issues" included in the motion to dismiss which were amenable to "voluntary resolution."